IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARAH E. DALE,

            Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

           Defendant.

No. 3:13-cv-01187-HZ

OPINION & ORDER

Merrill Schneider
SCHNEIDER KERR LAW OFFICES
PO Box 14490
Portland, OR 97293

    Attorney for Plaintiff

Adrian L. Brown
U.S. ATTORNEY'S OFFICE
1000 SW Third Ave., Suite 600
Portland, OR 97204

/ / /
/ / /
/ / /

1 - OPINION & ORDER

Lisa Goldoftas
SOCIAL SECURITY ADMINISTRATION
701 Fifth Ave., Suite 2900
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Sarah E. Dale brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner found Plaintiff not disabled and denied her application for Supplemental Security Income benefits ("SSIB"). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## PROCEDURAL BACKGROUND

      Plaintiff has a high school education, was 24 years old at the time she applied for SSIB on November 25, 2009, and alleges disability beginning on January 1, 2007. Tr. 21, 31. Plaintiff's claims were denied on July 6, 2010, and upon reconsideration on December 3, 2010. Id. A hearing was held on April 17, 2012, before Administrative Law Judge Paul Robeck (the "ALJ"). Id. On June 11, 2012, the ALJ found Plaintiff not disabled. Tr. 32. Plaintiff requested a review of the ALJ's decision, but the Appeals Council issued an order denying Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1, 16. This appeal followed.

## FACTUAL BACKGROUND

      The parties are familiar with the medical evidence and other evidence in the record. Therefore, the evidence will not be repeated except as necessary to explain my decision.

/ / /

/ / /

2 - OPINION & ORDER

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

At Step One, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At Step Two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At Step Three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At Step Four, the Commissioner determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If so, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

At Step Five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 25, 2009. Tr. at 23, Finding 1. At Step Two, the ALJ found Plaintiff had the "following severe impairments: mild degenerative disc disease of the lumbar spine, minimal disc bulging in the cervical spine, anxiety, and panic disorder." Tr. 23, Finding 2. At Step Three, the ALJ found Plaintiff's impairments did not meet or equal the requirements of a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24, Finding 3. At Step Four, the ALJ found Plaintiff had the RFC "to perform light work . . . except that [Plaintiff] can occasionally climb ladders, ropes, and scaffold, and frequently climb ramps and stairs." Tr. 25, Finding 4. The ALJ also found that Plaintiff "can frequently balance, stoop, kneel, crouch, and crawl[,] . . . can occasionally reach overhead with her left arm[, and] is limited to performing simple, routine tasks that involve no more than occasional interaction with coworkers and the public." Id. Based on Plaintiff's age, education, work experience, and [RFC, the ALJ found] there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. 31, Finding 9.

## STANDARD OF REVIEW

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879

F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. Howard, 782 F.2d at 1486. To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

## DISCUSSION

Plaintiff asserts that the ALJ erred in the following ways: (1) the ALJ improperly found that she was not credible; and (2) the ALJ erred when discounting the medical opinion of Laurie Beeson, FNP, Plaintiff's treating family nurse practitioner.

**I. Plaintiff's Credibility**

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's testimony regarding the severity of symptoms. See Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citation omitted). When doing so, the

claimant need not "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (citation and internal quotation marks omitted). "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." Id.

"To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . : (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). The ALJ may also consider "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ." Id.

Defendant does not argue that there is evidence of malingering. Therefore, the ALJ was required to provide clear and convincing reasons to discredit Plaintiff. A review of the record shows that the ALJ provided clear and convincing reasons supported by substantial evidence in the record when discrediting Plaintiff.

### A. Lack of Treatment for Plaintiff's Physical Impairments

"The ALJ is permitted to consider lack of treatment in his credibility determination." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). With regard to Plaintiff's physical

impairments, the ALJ determined that Plaintiff was not credible based on her "lack of treatment." Tr. 28. Specifically, the ALJ relied on the fact that Plaintiff "did not testify to receiving any medical treatment for the mild degenerative changes in her cervical and lumbar spines." Id. The ALJ also relied on the opinion of Plaintiff's examining physician, Kirk L. Weller, M.D., who the ALJ concluded, did not "reveal any evidence of acute or chronic denervation change." Id. In addition, the ALJ relied on "multiple MRI reports and EMG studies," which the ALJ found did not show "significant impingement of the nerve roots in [Plaintiff's] low back." Id.

Consistent with the ALJ's findings, Plaintiff did not testify about receiving any medical treatment related to the mild degenerative changes in her cervical and lumbar spines. In addition, the record shows that on April 5, 2010, Dr. Weller concluded that there was no "strong evidence either by lumbar MRI or by the EMG studies" showing any "significant impingements of nerve roots in [Plaintiff's] low back." Tr. 381. As such, Dr. Weller concluded that Plaintiff be "treated conservatively."[1] Tr. 381. Similarly, the record shows that Legacy Medical Group Neurosurgery also concluded that Plaintiff was "not appropriate for [n]eurosurgery." Tr. 471.

Based on the record, I conclude that the ALJ did not err when finding Plaintiff's pain allegations not entirely credible based on her lack of treatment.

### B. Plaintiff's Improvement with Mental Treatment

Improvement with treatment may also provide a clear and convincing reason for rejecting a claimant's testimony. See, e.g., Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599-600 (9th Cir. 1999). Here, the ALJ detailed the improvements that Plaintiff's prescribed mental treatments made when she followed them and concluded that Plaintiff's "treatment notes [were] persuasive evidence that medication, when taken regularly, treat [Plaintiff's] symptoms to the

---

[1] Conservative treatment is "sufficient to discount a claimants' testimony regarding [the] severity of an impairment." Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (citation omitted).

7 - OPINION & ORDER

degree that she is capable of performing fulltime work . . . ." Tr. 27.  Among other things, the ALJ stated that in November 2011, Plaintiff "consistently reported that her prescribed medications have been at least partially successful in controlling her symptoms." Tr. 26.  The ALJ also stated that in April 2009, Plaintiff told Beeson that her "panic attacks" were "almost gone"[2] and in September 2010, told her examining medical provider, Isabel Toledo-Silvestre, PMHNP, that "Xanax helped with panic attacks and Seroquel helped with symptoms related to posttraumatic stress disorder."  Tr. 26-27.

      The ALJ's findings are supported by substantial evidence in the record.  The record shows that on March 31, 2009, Plaintiff told her treating nurse, Jennifer Lamb, PMHNP, that her "sleep is better because of the . . . Seroquel."  Tr. 271.  In March 2009, Plaintiff also stated that since taking her "psychotropic medications," she was "less depressed," "did not have any insomnia, impulsivity, or poor decision making," was not experiencing any "suicidality," and even felt that she had "too much to live for."  Id.  Consistent with Plaintiff's representations, Beeson's September 2010 chart notes state that Plaintiff was "taking Seroquel and [X]anax and [was] doing well."  Tr. 470.  Beeson's September 2010 chart notes also state that "Seroquel help[ed] [with Plaintiff's PTSD] and Xanax [helped with Plaintiff's] panic attacks."  Id.  Based on her observations, Beeson recommended that Plaintiff "[c]ontinue medication as prescribed."  Id.  In February 2011, Beeson concluded that Plaintiff's panic attacks were "controlled with medication."  Tr. 467.

      The ALJ properly concluded that Plaintiff's statements were not credible based on the improvements she made when complying with treatment.

---

[2] Beeson's November 2009 chart notes state that in April 2009, Plaintiff represented that her panic attacks were "almost gone."  Tr. 267.  Beeson's November 2009 chart notes, however, state that despite Plaintiff's previous representation that her panic attacks were "almost gone," Plaintiff also represented that her panic attacks had "never gone away."  Id.

8 - OPINION & ORDER

**C. Failure to Follow Treatment**

"[U]nexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" may support a negative credibility finding. Smolen, 80 F.3d at 1284; see also SSR 96-7p, 1996 WL 374186, at *7 ("[An] individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). Here, the ALJ relied on Plaintiff's failure to seek treatment and failure to follow her prescribed treatment when finding Plaintiff not credible. Tr. 26. Specifically, the ALJ relied on Beeson's November 2009 chart notes stating that Beeson had not seen Plaintiff for seven months and that Plaintiff had stopped taking all of her prescribed medications, except for Seroquel. Id. The ALJ also relied on Beeson's April 2011 chart notes stating that Plaintiff had not seen Beeson for almost two months and had only made the April 2011 appointment because Plaintiff had been "advised by her lawyer [that] she was not coming in frequent enough." Tr. 27. The ALJ further relied on Beeson's April 2011 chart notes stating that Plaintiff had taken herself off of "Lisinopril and Gemfibrozil because she felt she was taking too many medications" and Toledo-Silvestre's chart notes stating that Plaintiff had taken herself off of "all medications while she was ill with the flu." Id.

The record supports the ALJ's findings. The record shows that in November 2009, Plaintiff went to see Beeson after approximately seven months had passed since her last visit with Beeson. Tr. 267. The record also shows that in April 2011, Plaintiff had not seen Beeson for approximately two months and according to Beeson's chart notes, the only reason why

Plaintiff had come to see her in April 2011 was because she was "applying for disability and [had been] advised by [her] lawyer that she [was] not coming in frequent enough . . . ."[3] Tr. 464.

The record also shows that Plaintiff frequently failed to follow her prescribed treatment and repeatedly stopped taking her prescribed medications without sufficient reasons. In November 2009, Beeson stated that Plaintiff had "stopped all meds," except Seroquel, simply because she felt she "was taking way too much medication." Tr. 267. In January 2011, the record shows that Plaintiff admitted that she had "stopped all her meds." Tr. 456. In February 2011, Beeson again noted that Plaintiff had taken herself off Lisinopril and Gemfibrozil four months earlier merely because she "felt she was taking too many meds." Tr. 467.

The ALJ properly considered Plaintiff's failure to comply with her prescribed course of treatment when discrediting Plaintiff's statements.

### D. Daily Activities

The ALJ also found Plaintiff not credible based on her daily activities. An ALJ may rely on the contradictions between a claimant's daily activities and her asserted limitations to determine whether a claimant is credible. See, e.g., Morgan, 169 F.3d at 600 ("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.") (Citation omitted). Here, the ALJ concluded that despite Plaintiff's mental and physical limitations and allegations that she could not work, Plaintiff's daily activities showed that "her impairments [were] not so severe as to be disabling." Tr. 29. In support of his conclusion, the ALJ relied on Plaintiff's adult function report, wherein Plaintiff:

---

[3] Although Plaintiff testified at the April 17, 2012, hearing that she did not make such a statement to Beeson, the ALJ properly relied on Beeson's chart notes stating otherwise. Tr. 60.

10 - OPINION & ORDER

>described her daily activities as making breakfast, getting her children ready for school, taking them to and picking them up from their bus, caring for her pets, and watching television.  Her household chores included preparing meals, laundry, washing dishes, vacuuming, and other cleaning.  She got around by walking and using public transportation.  She shopped in stores and managed money. . . . Her social activities included talking on the telephone and going for walks with her children and partner.  She regularly attended doctor appointments.

Tr. 28.

A careful review of the record shows that Plaintiff's daily activities constitute clear and convincing reasons supporting the ALJ's adverse credibility finding.  In Plaintiff's functional report, Plaintiff described her daily activities as "mak[ing] breakfast, help[ing her] children get ready for day [sic]," getting dressed, tak[ing her] daughter to bus [sic], do[ing] house work [sic], mak[ing] lunch, pick[ing her] daughter off bus [sic], . . . tak[ing] care of [her] children and animals, go[ing] to apointments [sic], . . . [and] get[ting her] family ready for bed . . . ." Tr. 194.  Plaintiff also stated in her functional report that she is responsible for caring for her children, that she cooked for them, bathed them, washed their cloths, took them to appointments, took them "to school and bus," shopped for them, cleaned up after them, and put them to bed.  Id.  Plaintiff stated in the same functional report that she also takes care of the family's pets, does the dishes, sweeps, vacuums, and is able to pays the bills, count change, handle a savings account, and use a check book.  Tr. 195-96.  Finally, Plaintiff stated that she does not need crutches, walkers, wheelchairs, canes, braces, or anything else to help her ambulate.  Tr. 200.

The ALJ properly relied on Plaintiff's daily activities when concluding that Plaintiff was not credible.

In summary, the ALJ proffered clear and convincing reasons supported by substantial evidence in the record when finding Plaintiff not credible.  Even if other reasons proffered by the ALJ were erroneous, such errors were harmless because the ALJ's ultimate credibility

11 - OPINION & ORDER

determination is adequately supported by substantial evidence in the record.  See Carmickle v. Comm'r of Soc. Sec. Admin., 533 F3d 1155, 1162 (9th Cir. 2008).  The ALJ's adverse credibility finding is sustained.

## II. Beeson's Medical Opinion

Nurse practitioners, such as Beeson, are considered "other sources."  20 C.F.R. § 404.1513(a); 20 C.F.R. § 404.1513(d)(1).  "The ALJ may discount testimony from these other sources if the ALJ gives reasons germane to each witness for doing so."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotation marks and citations omitted).  Both parties agree that Beeson is considered an "other source" and as such, agree that the ALJ was only required to provide germane reasons when discounting Beeson's medical opinion.

Plaintiff asserts the ALJ erred because he only provided reasons germane to Beeson's assessment of her exertional and postural limitations, not her other limitations, including her manipulative and mental limitations.  Accordingly, Plaintiff asserts that this case must be remanded for additional proceedings.

Plaintiff's assertion lacks merit.  Here, the ALJ specifically addressed Beeson's assessment of Plaintiff's limitations, which stated that Plaintiff can lift less than ten pounds; can only stand and walk for a total of two hours and sit for eight hours; "can never climb, balance, crouch, or crawl;" and "has limits in her abilities to reach, handle, finger, and feel."  Tr. 30.  The ALJ also recognized Beeson's opinion stating that Plaintiff's mental impairments "cause a moderate limitation in maintaining concentration, persistence, or pace, a marked limitation in social functioning, and no limitation in activities of daily living."  Id.  The ALJ further recognized Beeson's conclusion that Plaintiff's impairments would "cause her to miss two or more days of work each month."  Id.  The ALJ, however, accorded Beeson's opinion "limited

weight" because the "longitudinal record, including . . . Beeson's treatment notes[,] d[i]d not objectively support the degree of exertional and postural limitation that she propose[d.]" Id. The ALJ also stated that he would include in Plaintiff's RFC "manipulative and mental limitations" that were "generally consistent" with Beeson's assessment. Id.

Plaintiff cites no authority, and I find none, for the proposition that the ALJ must give reasons germane to every limitation assessed by "other sources"–including every mental and physical limitation. Rather, the ALJ must "give[] reasons germane to each witness" when discounting or rejecting the opinion of that "other source." Molina, 674 F.3d at 1111 (emphasis added). Here, the ALJ gave reasons germane to Beeson when discounting her medical opinion–namely, that Beeson's assessment of Plaintiff's physical limitations were unsupported by the record.[4] A review of the record shows that Beeson's conclusion that Plaintiff has physical limitations is unsupported by any objective evidence in the record. As discussed earlier, Dr. Weller, Plaintiff's examining doctor, did not find any significant impingements of roots in Plaintiff's lower back and concluded neurosurgery would not be appropriate. Plaintiff's activities of daily living also contradict Beeson's opinion regarding Plaintiff's physical limitations. Plaintiff is able to care for her children and pets, perform household chores, and attend appointments. Finally, the ALJ gave great weight to Neal E. Berner, M.D., who opined upon Plaintiff's exertional and postural limitations. The limitations proposed by Dr. Berner are present in Plaintiff's RFC.

---

[4] To the extent Defendant argues that the ALJ properly discounted Beeson's opinion because her assessments of Plaintiff's mental limitations were unsupported by the record, such argument fails. The record shows that the ALJ discounted Beeson's opinion based on the lack of evidence supporting her assessment of Plaintiff's physical limitations, not mental limitations. Tr. 30. The Commissioner's post-hoc rationalization that the ALJ properly discounted Beeson's opinion because nothing in the record supported her assessment of Plaintiff's mental limitations is legally insufficient. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision").

13 - OPINION & ORDER

Plaintiff points to no evidence in the record, other than her own subjective statements and Beeson's unsupported conclusions, to argue that Beeson's assessment was supported by the record. Plaintiff also cites no evidence, and I do not find any, showing that other medical providers in the record assessed Plaintiff with the same limitations as those assessed by Beeson. In short, the ALJ provided sufficiently germane reasons to discount Beeson's medical opinion. Having properly discounted Beeson's opinion, the ALJ was free to include in Plaintiff's RFC "manipulative and mental limitations" that were "generally consistent" with Beeson's assessment, which the record shows he did.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

Dated this 13 day of May, 2014.

MARCO A. HERNÁNDEZ
United States District Judge